*In re* JAMES STILTS, *Petitioner.*

No. 15,125.   (87 Pac. 1134.)

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Arrest Without a Warrant—Writ of Habeas Corpus Denied.* Evidence taken on a preliminary examination of petitioner on the charge of assaulting an officer who attempted to arrest him without a warrant examined, and *held* sufficient to justify holding the petitioner to the district court.

Original proceeding in *habeas corpus.* Opinion filed December 8, 1906. Writ denied.

*R. W. Turner,* and *E. P. Hotchkiss,* for petitioner.

*D. J. Coy,* and *G. H. Bailey,* for respondent.

The opinion of the court was delivered by

PORTER, J.: The petitioner was charged with a felonious assault in striking one Jacob Burger in the pit of the stomach with a deadly weapon, commonly known as a beer bottle, with intent to maim, wound and kill. On his preliminary examination he was held under bond to answer to the district court.

It is claimed that the evidence of the preliminary examination shows that no offense was committed. The facts leading up to the charge upon which the petitioner was held are as follow: During the evening of August 4, 1906, the petitioner had an altercation with Jacob Burger in front of a hotel in the town of Randall. Burger was the city marshal. The petitioner was drunk and disorderly. He used abusive and threatening language toward the marshal, who made no attempt to arrest him at that time. He then challenged the marshal to go down to the railroad-tracks, a distance of about 200 feet from the hotel. The challenge was accepted. When they got to the railroad they stopped. The evidence of the marshal is that the petitioner drew his knife and the marshal left suddenly

and went home for the purpose of procuring a gun. Soon afterward he returned up town in search of the petitioner. He deputized one of the bystanders to go with him for the purpose of assisting in arresting Stilts. He went to another 'house some blocks away and procured a revolver for himself, giving his own gun to the deputy. Inquiries were made for Stilts and they were told that he had gone toward the blacksmith shop. They went and hunted for him. After a little while they learned that he had started home, and they went to his home for the purpose of arresting him for the disturbance. It was about eleven o'clock in the evening and the petitioner was in his house.

The marshal had no warrant. The testimony at the preliminary examination, so far as it concerns the acsault and the circumstances leading up to it, consists mainly of the evidence given by the marshal. He testified that he sent the deputy to the back door, and went himself to the front door and called to the petitioner; that the latter said, "What do you want?" and called him a vile name; that he said, "Now Jim, there is no use to act this way, I am going to arrest you," and Stilts said, "Don't come in"; that "finally I pulled the screen door back and stepped up on the floor and started in, and just then he threw and hit me, and just then I shot." His testimony is that the petitioner threw a beer bottle at him, striking him in the pit of the stomach; that he then fired four shots from a revolver, one of the shots taking effect in the arm of Stilts, who then came out and gave himself up. The marshal took him to a physician, and, it appearing that his wound was serious, he was allowed to return home and no further attempt was made to prosecute him for the disturbance on the street; but four days afterward the marshal filed the complaint upon which the warrant for his arrest issued on the charge of assaulting the marshal and striking him with the beer bottle.

It is argued by the petitioner that the evidence conclusively shows that no offense was committed; that

the attempted arrest was without authority of law, for the reason that the peace had been restored; that the disorderly conduct of the petitioner had ceased and he had gone to his own home and had the right under the circumstances to resist an arrest without a warrant.

The state contends, on the other hand, that the evidence shows a disturbance of the peace and a following up by the officer for the purpose of an arrest so closely in point of time that it was all one transaction.

"The arrest must be made at the time of the offense or immediately after its commission, or upon fresh pursuit, while the offender is fleeing from the scene of the crime." (2 A. & E. Encycl. of L. 876.)

The law is well settled, however, that where an officer attempts to make an arrest for a misdemeanor committed in his view, after peace has been restored, the arrest is unlawful unless made with a warrant.

"When a policeman, after having seen a breach of the peace or a misdemeanor committed, *departs, and afterward returns*, he cannot arrest without warrant for such previous offense so committed in his view. *The shortness of the interval does not affect the question.*" (*Meyer v. Clark,* 41 N. Y. Super. Ct. 107, syllabus. See, also, 1 Chit. Crim. Law, 5th Am. ed., 23; *Coupey v. Henley et al.,* 2 Esp. [Eng.] 540; 1 East's Pleas of the Crown [Eng.] 305; *Reg. v. John Marsden,* 11 Cox's C. C. [Eng.] 90; *Regina v. Walker,* 25 Eng. L. & Eq. 589.)

The evidence at a preliminary is not necessarily conclusive upon any point, and is generally sufficient to authorize a holding over if a probability appears that an offense has been committed. Whether the petitioner is or is not guilty can best be determined from a full hearing of all the evidence, and we do not feel warranted under the circumstances in discharging him. The writ is denied.

All the Justices concurring.